UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

CASEY DAVID CROWTHER

CASE NO. 2:S20-cr-114-FtM-66MRM
18 U.S.C. § 1344
18 U.S.C. § 1014
18 U.S.C. § 1957

### SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT ONE
### (Bank Fraud)

**A.   Introduction**

At all times material to this Second Superseding Indictment:

1. Casey David Crowther was a resident of North Fort Myers, Florida, who served as president, director, and registered agent of Target Roofing and Sheet Metal, Inc.

2. Target Roofing and Sheet Metal, Inc. ("Target Roofing") was a Florida corporation controlled by Casey David Crowther with its stated principal place of business in Fort Myers, Florida. Target Roofing operated as a roofing company and provided residential and commercial roofing services, which included the installation of new roofs, reroofing, and roof repair in the Southwest Florida area. Target Roofing maintained bank accounts at a

1

federally insured financial institution ("the Lender"). Casey David Crowther was the sole signatory on those accounts.

3. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

6. To obtain a PPP loan, a qualifying business was required to

submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

7. PPP loan applications were processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and

principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

9.  The Lender was a financial institution federally insured by the Federal Deposit Insurance Corporation ("FDIC") headquartered and with branches in Lee County, Florida. The Lender participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of PPP.

### B. The Scheme to Defraud

10. Starting in or about April 2020, and continuing through and including the date of this Second Superseding Indictment, in the Middle District of Florida, and elsewhere, the defendant,

CASEY DAVID CROWTHER,

did knowingly and intentionally execute, and attempt to execute, a scheme and artifice to defraud a financial institution, and to obtain monies, funds, credits, assets, and other property owned by, and under the custody and control of, a financial institution, by means of materially false and fraudulent pretenses, representations and promises.

### C. Manner and Means of the Scheme

11. The manner and means by which the defendant sought to

accomplish the scheme and artifice to defraud included, among others, the following:

    a. It was part of the scheme and artifice to defraud that the defendant would and did submit and cause the submission of a false and fraudulent PPP loan application and revised PPP loan application to the Lender on behalf of Target Roofing seeking a PPP loan through the SBA.

    b. It was further part of the scheme and artifice to defraud that the defendant would and did make and cause to be made material false, fraudulent, and misleading representations to the Lender and SBA related to the use of the PPP funds in the PPP loan application submitted on or about April 7, 2020, in the revised PPP loan application submitted on or about April 13, 2020, and in loan documents submitted to the Lender on or about April 14, 2020.

    c. It was further part of the scheme and artifice to defraud that the defendant would and did represent that all SBA PPP Loan proceeds would be used by the defendant only for business related purposes as specified in the loan application.

    d. It was further part of the scheme and artifice to defraud that the defendant would and did certify that the PPP funds acquired from the requested loan would be used to retain workers and maintain payroll or make

5

mortgage payments, lease payments, and utility payments on behalf of Target Roofing.

e. It was further part of the scheme and artifice to defraud that the defendant's materially false, fraudulent, and misleading representations would and did cause the Lender and SBA to approve the PPP loan application and the Lender to deposit $2,098,700.00 in PPP loan funds into an account under the defendant's control.

f. It was further part of the scheme and artifice to defraud that the defendant would and did use and cause the PPP funds to be used for unauthorized purposes and for his own personal enrichment, including payment towards the principal of a promissory note and the purchase of a 2020 40' Invincible Catamaran boat.

g. It was further part of the scheme and artifice to defraud that the defendant would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in furtherance of the scheme to defraud.

### D. **Execution of the Scheme**

12. Starting in or about April 2020, and continuing through and including the date of this Second Superseding Indictment, in the Middle District of Florida and elsewhere, the defendant,

CASEY DAVID CROWTHER,

knowingly executed the aforesaid scheme and artifice to defraud, by submitting a false PPP loan application and revised PPP loan application on behalf of his company, Target Roofing, in order to receive a loan from the Lender, a bank insured by the FDIC, which loan was guaranteed by the SBA and which proceeds were deposited into accounts at the Lender under the defendant's custody and control.

All in violation of 18 U.S.C. §§ 1344 and 2.

## COUNT TWO
### (False Statement to Lending Institution)

1. Paragraphs 1 through 9 of Part A of Count One of this Second Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2. On or about April 13, 2020, in the Middle District of Florida and elsewhere, the defendant,

CASEY DAVID CROWTHER,

knowingly made a false statement, for the purpose of influencing the actions of the Lender, an institution the accounts of which were insured by the FDIC, in connection with a PPP loan application and revised PPP loan application by Target Roofing, in that the defendant signed and initialed a revised PPP loan application representing SBA loan proceeds would only be used for business

7

related purposes and certifying that the PPP funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments on behalf of Target Roofing; when in truth and in fact, as the defendant well knew, all of the SBA loan proceeds would not only be used for business related purposes and that the PPP funds would not be exclusively used to retain workers and maintain payroll or to make mortgage interest payments, lease payments, and utility payments on behalf of Target Roofing.

In violation of 18 U.S.C. §§ 1014 and 2.

## COUNTS THREE AND FOUR
### (Illegal Monetary Transaction)

1. Paragraphs 1 through 9 of Part A of Count One of this Second Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2. On or about the date set forth below, in the Middle District of Florida, and elsewhere, the defendant,

CASEY DAVID CROWTHER,

did knowingly engage and attempt to engage in the described monetary transaction, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, bank fraud, in violation of 18 U.S.C § 1344:

8

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| **THREE** | April 21, 2020 | Defendant caused $100,000 to be transmitted, via wire, from the Lender account ending in 6781 in the name of Target Roofing to S.A. in connection with a $722,474.00 promissory note. |
| **FOUR** | April 24, 2020 | Defendant caused $689,417.00 to be transmitted, via wire, from the Lender account ending in 6781 in the name of Target Roofing to Sara Bay Marina in connection with defendant's purchase of a 40' Invincible Catamaran boat. |

In violation of 18 U.S.C. §§ 1957 and 2.

### COUNT FIVE
### (Bank Fraud)

A. **Introduction**

At all times material to this Second Superseding Indictment:

1. Paragraphs 1 and 2 of Part A of Count One of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2. Casey David Crowther had personal and business accounts, along with a line of credit account, with the Lender, including a bank account ending in 8841, over which he had signatory authority.

3. The Mortgage Broker was headquartered in Grand Rapids, Michigan, with offices in the Middle District of Florida and elsewhere. The Mortgage Broker was in the business of assisting borrowers in obtaining loans

9

to purchase residential homes and other property, including by connecting borrowers with lenders and assisting borrowers in completing and submitting loan applications to lenders. The Mortgage Broker also referred to itself as a loan originator.

4.   The Mortgage Lender was a financial institution and mortgage lending business, as defined in 18 U.S.C. §§ 20 and 27, headquartered in Atlanta, Georgia, with an office in the Middle District of Florida. The Mortgage Lender offered mortgages to individuals and entities seeking to purchase real property. The Mortgage Lender relied upon information and documents provided to it by the borrower to determine whether to offer the borrower a mortgage, including the information contained in the Uniform Residential Loan Application.

5.   A Uniform Residential Loan Application ("URLA"), commonly referred to as a mortgage loan application, was generally utilized by lending institutions and other lenders in the mortgage loan approval process. The URLA was designed to be completed by the applicant borrower with the lender's assistance and, if applicable, the broker's assistance and required the borrower to truthfully provide to the lender various types of material information, including employment information, monthly income, detailed financial information (including assets and liability information), and other

specifics of the residential property transaction, such as the purchase price and whether the borrower would use the property as a primary residence, secondary residence, or an investment. Each prospective borrower is required to sign the URLA under penalty of perjury and pledge that the information is true and correct.

6. The Title Company was a real estate title and escrow company headquartered and with offices in the Middle District of Florida.

7. The Residence was real property located at 3653 San Carlos Dr., Saint James City in Lee County, in the Middle District of Florida.

### B. The Scheme to Defraud

8. Starting in or about May 2020, and continuing through and including the date of this Second Superseding Indictment, in the Middle District of Florida, and elsewhere, the defendant,

CASEY DAVID CROWTHER,

did knowingly and intentionally execute, and attempt to execute, a scheme and artifice to defraud a financial institution, and to obtain monies, funds, credits, assets, and other property owned by, and under the custody and control of, a financial institution, by means of materially false and fraudulent pretenses, representations and promises.

### C. Manner and Means of the Scheme

9. The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

a. It was part of the scheme and artifice to defraud that the defendant would and did complete or cause to be completed URLAs, which included false and fraudulent information concerning the defendant's source of down payment and liquid assets in a bank account ending in 8841 held by the defendant with the Lender.

b. It was further part of the scheme and artifice to defraud that the defendant would and did sign URLAs, which were dated June 25, 2020 and July 31, 2020, and which acknowledged under penalty of perjury that the information contained in the URLA was true and correct.

c. It was further part of the scheme and artifice to defraud that the defendant would and did submit or cause to be submitted completed false and fraudulent URLAs to the Mortgage Lender and the Mortgage Broker.

d. It was further part of the scheme and artifice to defraud that the defendant would and did create and cause to be created false and fraudulent bank statements for a bank account ending in 8841 held by the defendant with the Lender, which purported to show the defendant had more assets than he

actually had.

      e. It was further part of the scheme and artifice to defraud that the defendant would and did submit and cause the submission of false and fraudulent bank statements to the Mortgage Lender and Mortgage Broker for the purpose of misrepresenting the defendant's liquid assets and misrepresenting the source of the down payment for the purchase of the Residence.

      f. It was further part of the scheme and artifice to defraud that the defendant would and did submit and cause the submission of materially false and fraudulent bank statements to the Mortgage Lender for the purpose of influencing the Mortgage Lender's approval of a mortgage loan for the purchase of the Residence.

      g. It was further part of the scheme and artifice to defraud that the defendant's materially false, fraudulent, and misleading representations would and did cause the Mortgage Lender to approve the mortgage loan and disburse approximately $640,381.21 to the Title Company for the defendant's purchase of the Residence.

      h. It was further part of the scheme and artifice to defraud that the defendant would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of acts performed in

furtherance of the scheme to defraud.

### D. Execution of the Scheme

10. Starting in or about May 2020, and continuing through and including the date of this Second Superseding Indictment, in the Middle District of Florida and elsewhere, the defendant,

CASEY DAVID CROWTHER,

knowingly executed the aforesaid scheme and artifice to defraud, by submitting false and fraudulent URLAs and false and fraudulent supporting bank statements in order to receive a mortgage from the Mortgage Lender, a financial institution and mortgage lending business, which caused the disbursement of approximately $640,381.21 in mortgage loan funds to be made for the purchase of the Residence.

All in violation of 18 U.S.C. §§ 1344 and 2.

### COUNT SIX
### (False Statement to Lending Institution)

1. Paragraphs 1 through 7 of Part A of Count Five of this Second Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2. On or about July 31, 2020, in the Middle District of Florida and elsewhere, the defendant,

CASEY DAVID CROWTHER,

14

knowingly made a false statement, for the purpose of influencing the actions of the Mortgage Lender, a mortgage lending business, in connection with a URLA, in that the defendant represented he had approximately $1,071,696.00 in liquid assets in an account with the Lender which would be used as the source of his down payment; when in truth and in fact, as the defendant well knew, he did not have sufficient liquid assets in the account to cover the down payment and that he would draw from a line of credit with the Lender to fund the down payment for the purchase of the Residence.

In violation of 18 U.S.C. §§ 1014 and 2.

## COUNT SEVEN
### (Illegal Monetary Transaction)

1.   Paragraphs 1 through 7 of Part A of Count Five of this Second Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.   On or about July 31, 2020, in the Middle District of Florida, and elsewhere, the defendant,

CASEY DAVID CROWTHER,

did knowingly engage and attempt to engage in the described monetary transaction, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, bank fraud, in violation of 18

U.S.C § 1344, that is the Defendant caused $640,381.21 to be transmitted, via wire, by the Mortgage Lender to the Title Company's escrow account ending in 4800, in connection with the defendant's purchase of the Residence.

In violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE

1.  The allegations contained in Counts One through Seven are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 982(a)(1) and (a)(2)(A).

2.  Upon conviction of a violation of 18 U.S.C §§ 1014, and/or 1344, the defendant,

CASEY DAVID CROWTHER,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violation.

3.  Upon conviction of a violation of 18 U.S.C. § 1957, the defendant,

CASEY DAVID CROWTHER,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

16

4. The property to be forfeited includes, but is not limited to, the following:

    a. an order of forfeiture in the amount of approximately $2,098,700.00, which represents the proceeds obtained from the offenses; and

    b. a 2020 40' Invincible Catamaran, Hull ID# IVBC0076D920, registered to and owned by Casey Crowther; and

    c. the real property located at 3653 San Carlos Dr., Saint James City, Florida 33956 including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

Lot 19, Block F, of that certain subdivision known as Bayview Acres, according to the map or plat thereof on file and recorded in the office of the Clerk of the Circuit Court of Lee County, Florida, in Plat Book 11, at Pages 100 and 101.

Parcel ID Number: 02-46-22-11-0000F.0190

5. If any of the property described above, as a result of any act or omission of the defendant:

17

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C § 853(p), as incorporated by 18 U.S.C § 982(b)(1).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Trenton J. Reichling
Assistant United States Attorney

By: _____
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

18

## UNITED STATES DISTRICT COURT
Middle District of Florida
Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

CASEY DAVID CROWTHER

**SECOND SUPERSEDING INDICTMENT**

Violations: 18 U.S.C. § 1344,
18 U.S.C. § 1014, and
18 U.S.C. § 1957.

A true bill,

_____
Foreperson

Filed in open court this 10th day

of February, 2021.

_____
Clerk

Bail $_____

GPO 863 525